{¶ 25} These are the facts the trial court considered when it found that reasonable minds could reach one conclusion, and that conclusion was adverse to Coleman. Dr. Barnovsky informed his staff that there was "money missing" and then, one week later, directed them to come in early for a staff meeting, where he confronted Coleman with the statement, "Jodi, we would like to know what you did with my money." The inference is inescapable. This statement, however, was followed with the question, "if you write out a cash receipt, did the cash get put in the drawer?" Following this series of accusations in front of the entire staff, Coleman was suspended "pending a police investigation." There was no police investigation; there never was any proof that Coleman stole any money; and Coleman was fired for an alleged "book-keeping error." It is beyond dispute that her reputation was damaged. But that is not where the inquiry ends.
 {¶ 26} The legal standard to be met in this matter is whether Dr. Barnovsky, who all but called Coleman a thief in front of her co-workers, was entitled to a privilege. The majority suggests that "the communication did not accuse [Coleman] of a theft." I respectfully disagree and believe reasonable minds, pursuant to Civ. R. 56, could readily differ. The real question to be decided was whether Dr. Barnovsky had a good faith reason to accuse Coleman of theft in front of her co-workers. Such a decision is simply not appropriate in a summary judgment exercise. Reasonable minds could readily conclude that (1) the doctor was accusing Coleman, by innuendo, of outright theft and (2) the accusation was made with reckless disregard for the truth of the matter asserted. That is defamation, as a matter of law.
 {¶ 27} The matter should be reversed to permit a jury to "weigh" the inferences, as opposed to the trial court having done so.